UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-60194-CR-COHN/SELTZER

UNITED STATES OF AMERICA,

    Plaintiff,

v.

STEVEN STOLL, et al.

    Defendants.

_____/

## DEFENDANT STEVEN STOLL'S MOTION IN LIMINE

Defendant Steven Stoll files this Motion in Limine to exclude certain evidence in connection with the upcoming trial of this case, and in support states as follows.

The trial of United States v. Velez et al. has revealed a number of problems in the evidence likely to be adduced at Mr. Stoll's trial. Much of the Government's evidence is cumulative. Other evidence is designed to smear Mr. Stoll before the jury in the hope that the jury will convict not for any crime Mr. Stoll is alleged to have committed, but rather because of a general sense of "wrongness" that the Government will attempt to associate with companies that Mr. Stoll owned. This approach prejudices Mr. Stoll and is unsupported by the law and the Federal Rules of Evidence. Accordingly, Mr. Stoll moves in limine as follows.

**1.  Exclusion of Cumulative Evidence Elicited from Lender Witness**

In the Velez trial, the Government has put on a parade of lender witnesses who have summarized documents for which they have no first-hand knowledge, and who testify as pseudo-experts regarding the mortgage lending industry. The Government used these lay people as echo chambers to repeat, over and over, broad propositions that support the Government's theory, and

repeatedly summarize the contents of documents that they know nothing about. Such evidence is needlessly cumulative, and should be excluded under Federal Rules of Evidence 403 and 611. See, e.g., United States v. Flores-De-Jesus, 568 F.3d 8 (1st Cir. 2009) (excluding confidential informant's testimony as cumulative and more detailed than necessary to explain a fact already established).

The Government's witness from Ampro, Linda Epplestone, illustrates this objectionable approach. Despite Eppelstone having no personal knowledge of the actual underwriting process for a specific loan, and only using a backwards-looking analysis like a summary witness or expert witness would, the Government proceeded to use Epplestone (and at other times used other lender witnesses) to opine whether specific statements on documents related to specific transactions, for which she had no personal knowledge of the underwriting process, influenced Ampro's lending decision. The Government's used this approach with its legion of lender witnesses. Despite their lack of personal knowledge, they summarized documents from particular loan files. They impermissibly repeated the Government's version of what lenders 'would' have done, often appearing to offer expert-like opinions on the documents. See United States v. Marshall, 173 F.3d 1312 (11th Cir. 1999) (lay opinion testimony must be based on personal observation of witness). Lender witnesses with no firsthand knowledge should not be permitted to testify, for example, that someone from the lender called and verified employment. Witnesses without firsthand knowledge have no idea whether that happened. A witness who has reviewed a file only knows what a document purports to be, not whether the underlying matter is true. And their testimony should not be allowed to suggest otherwise.

The Government should be excluded from converting lay lender witnesses without actual knowledge into summary witnesses and pseudo-experts, and to presenting the same evidence over and over at trial.

### 2. Exclusion of Cumulative Testimony from the Government's HUD Witness

The testimony elicited from the Government's HUD witness, Theresa Payne, was also impermissibly cumulative. Presumably, the legitimate purpose of Payne's testimony was the Government's attempt to establish the element of jurisdiction for the purposes of the false statement counts. But like the lender witnesses, the Government used her as a pseudo expert to present cumulative testimony about the HUD-1 and to repeat the Government's theory about what each line means on form means, despite the Government having already used Sharon Dawes for the same purpose:

> Q. Do you see line 201?
> A. 201, deposit or earnest money.
> Q. Based on your knowledge and experience with HUD, what is it line 201 requires?
> A. The earnest deposit is usually, in a sales transaction, where a borrower presents a check, earnest money deposit with the contract to buy the property.
> Q. That is part of any regulation of RESPA or the CFR regulations?
> A. In the sense it shows up on the final HUD settlement statement, that is about the extent.
> Q. And based on your experience and understanding, who is supposed to provide the deposit or earnest money that is reflected on 201?
> A. The borrower to purchase the property.

(Transcript, 2610:19-2611:8). And with respect to cash from borrower:

> Q. In the transaction where the borrower is buying a house, it would be cash from borrower, then?
> A. Yes.
> Q. And must that money come from the borrower?
> A. Yes.
> Q. Is there any exception made as to the borrower can get the money from some other source?

> A. Well, as I said, if it was gift funds, which would be reflected as such on the HUD-1 settlement statement.
> Q. Other than that, it must come from the borrower?
> A. Yes.

(Transcript, 2612:13-22). In light of the other testimony the Government obtained through other witnesses, Payne's opining on the intricacies of particular lines on the HUD-1 was improper and cumulative. As the Court acknowledged during the subsequent testimony of the Government's expert Pollock, "We have been through [HUD-1 forms] ad nauseum. (Transcript, 6367:21-22). Such testimony, from Payne or whatever HUD witness the Government calls in Mr. Stoll's trial, should be excluded.

>  **3.  Exclusion of the Government's Deceptive, Prejudicial, and Counterfactual References to "Steven Stoll" when it Means "TurnKey Title" or "The Lending House"**

If the Velez trial is any indication, the Government intends to contaminate Mr. Stoll with implications of general wrongdoing at his company. Under the Government's theory, the owner of a company is directly responsible for everything that occurs at a business. And in fact, the Government appears to believe that the name of a business owner may be freely substituted for that of the business itself.

In Velez, the Government has engaged in the prejudicial and intellectually dishonest practice of substituting Mr. Stoll's name for that of the entities The Lending House and TurnKey Title. For example, the Government repeatedly elicited from its Cooperator Rene Rodriguez testimony that 50% of commissions went to Gulla and Rodriguez, and 50% went to "Steven Stoll". See (Transcript pp. 4426 and 4541). The Government knows that Steven Stoll did not receive a split of those commissions. In fact, the portion of commissions were received by the entity The Lending House, Inc. Obviously, The Lending House had the same expenses that other

businesses do: salaries, overhead, operating expenses, costs of doing business, and advertising. In fact, advertising was a significant expense -- a substantial amount of The Lending House's business came as a result of advertising. And The Lending House paid brokers bonuses quarterly and at the end of the year according to certain criteria.

The Government's intentional substitution of Mr. Stoll's name for that of business entities is designed to make Mr. Stoll appear to have a connection or personal stake (of 50%) in the profit that Gulla and Rodriguez made through their then-unknown fraud. This approach ignores the reality that any de minimis gains that Mr. Stoll may have eventually received as the shareholder of The Lending House were far less than the Government suggests, and obfuscates the reality that any gains Mr. Stoll may have ultimately received are inconsistent with those of a person involved in fraud. The Government's tactic is unsupported by the facts, confuses the jury, and is unfairly prejudicial to Mr. Stoll.

The Government also adduced from its Cooperator Rodriguez the false and misleading testimony that OFR subpoenas were issued to "Steven Stoll", and appears to have at another time incorrectly implied that funds flowed through Mr. Stoll's personal bank accounts. These are but some examples of the many times in the <u>Velez</u> trial where the Government and/or Government witnesses used Mr. Stoll's name when the knowledge of the witness and the honest facts only relate to the companies Mr. Stoll owned.[1]

Accordingly, the Government should be excluded from referring to "Steven Stoll" when it really means "The Lending House" or "TurnKey Title", or eliciting the same from witnesses.

---

[1] During the <u>Velez</u> trial the Government has also apparently been sloppy in using the names "TurnKey Title" and "The Lending House". For example, Government witness Passero erroneously used "TurnKey Title" in place of a concededly unrelated entity called "Title Masters". (Transcript, pp. 6197 to 6200).

### 4. Exclusion of References to "Shadow Boxing" Or Other Vague and Improper Implications of Impropriety

In the Velez trial, various parties examined witness regarding vague allegations of misconduct at TurnKey Title, including a practice called "shadow boxing" which they said unspecified employees of Mr. Stoll engaged in. For example, Gulla was asked on cross whether he was "familiar with the concept or tool called the Shadow Box at the Lending House?" (Transcript, 1150:12-14)[2]. Stacy Margulies was asked about "shadow boxing" or whether she saw people tracing names. (Transcript 2808:21-22). The Government asked whether Laraine Hart had seen anyone do that, whose response was that she "can't recall anyone specifically".[3] (Transcript, 3920:9-11). The same topics came up with the testimony of Rene Rodriguez and Jacqueline Trumbore. And defense counsel with an interest in shifting the focus to the companies owned by Mr. Stoll argued that there was tracing of signatures and the like at these companies. But there was been no suggestion that "shadow boxing" ever actually occurred in this case or related to anything connected to the so-called "Guaracino transactions". Similarly, Laraine Hart testified that she signed signatures for others, and had people outside the closing room witness documents, and saw other people engaging in these practices. But this prejudicial testimony was not directed to anything that occurred in this case, and not directed to anything Steven Stoll knew. The effect of this testimony is to burden Mr. Stoll with vague implications of impropriety at the company he owned, and imply some sort of knowledge as to him. Such testimony is probative of nothing in this case and simply irrelevant. It is also highly prejudicial to Mr. Stoll and should be excluded under a FRE 403 analysis. See, e.g., Old Chief v. United States, 519 U.S.

---

[2] He answered "No."

[3] On cross, she stated that she had seen Government Cooperator Trumbore trace signatures, but could name no other specific individual. (Transcript, 3936:6-15). And she testified that Steven Stoll had **not** engaged in the alleged practice. (Transcript, 3936:10-11).

172 (1997) (noting that the term "unfair prejudice" relates to evidence that would "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged"), or pursuant to FRE 404(b). And as a broad matter, the Government should not be permitted to reference "shadow boxing" or any alleged forgery without detailing the allegation with particularity, including identifying the document itself, the name of the individual who purportedly created the alleged forgery, the date of the alleged forgery, the purpose of the alleged forgery, and the other alleged facts and circumstances.

With regard to FRE 404(b), there was not timely disclosure under the rule of the Government intent to offer such "shadow boxing" evidence, and the evidence has the effect of impermissibly implying a bad propensity on Mr. Stoll's part, based not only allegations unconnected with the facts in this case, but also involving mostly unspecified individuals at an entity he owned, and not Mr. Stoll himself. Such evidence would complicate the issues in the case and confuse and misled the jury about the issues; it should be excluded. See, e.g., United States v. Rodriguez-Estrada, 877 F.2d 153, 155 (1st Cir. 1989); see also United States v. Terebecki, 692 F.2d 1345 (11th Cir. 1982).

And to the extent such testimony suggests violations of civil law or improper business practices, it is also impermissible. It is well established that poor business conduct does not automatically rise to the level of criminally fraudulent behavior. United States v. Wolf, 820 F.2d 1499, 1505 (9th Cir. 1987) (vacating conviction where Government used proof of civil banking regulation as proof of intent); United States v. Christo, 614 F.2d 486 (5th Cir. 1980) (reversing conviction based at least in part on a "series of checking account overdrafts" and a civil regulatory violation). Much of the Government's evidence offered during the Velez trial seems to suggest that regulations were violated or improper practices engaged at TurnKey Title, but has

no relevance to whether or not the criminal violations of law charged in the Indictment in this case occurred. This evidence also falls afoul of FRE 404(b) and FRE 403.

Accordingly, the parties should be prohibited from adducing testimony regarding "shadow boxing", tracing of signatures, or any other vague implication of impropriety purportedly connected to entities that Mr. Stoll owned, and which amounts to at best violations of civil or regulatory rules.

### 5. Exclusion of Undue Speculation about what Title Agents "Would be Aware of"

In the Velez trial, the Government asks its Expert Witness Pollock to testify regarding what "Title Agents" "would have been aware of". (Transcript, 6382:7-8). This amounts to simple speculation; all such speculation should be excluded, including testimony regarding what title agents "should have", "could have", or "would have" known.

FRE 702 permits expert testimony only where the court determines that "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." It does not allow the Government to use Pollock or others to fill in factual gaps regarding what about what a "Title Agent" allegedly knew. The testimony is even more problematic, and more speculative, because it also leaves open the question of who the "Title Agent" Pollock referred to is. Is it the individual TurnKey Title employee at closing? Is it the entity itself? We submit that Pollock's speculation is another effort by the Government to blur these lines and imply knowledge to Mr. Stoll through speculation.

### 6. Exclusion of Misleading and Prejudicial Phrasing on Exhibit List

The Government's exhibit list in the Velez trial often phrases recites what a particular document is in terms that are misleading and prejudicial as to Mr. Stoll. For example, 9C.6 is

listed as "Mortgage (First) signed by Stoll 6/14/05". The mortgage is only "signed" by Mr. Stoll in the sense that he merely notarized the signatures. But the Government has instead chosen wording that implies a greater level of involvement from Mr. Stoll. When the jury takes the exhibit list with it to deliberate, it will be misled as to Mr. Stoll's degree of connection to the documents and to the transactions. The Government has (perhaps deliberately) used 'loose' wording here to suggest a greater involvement or responsibility by Mr. Stoll than the documents show – much as it has done by inaccurately substituting Mr. Stoll's name in place of "TurnKey", or "The Lending House". Accordingly, the Government's exhibit list should avoid such argumentative language. Mr. Stoll requests that the Court require the Government to identify its exhibits in non-prejudicial and non-misleading terms.[4]

## 7. Cautionary Instruction that Pleas of Government Witnesses Relate Only to Them

Throughout the course of the Velez trial, the Government asked its cooperating witnesses about their plea deals. While the Government may want to anticipate cross-examination on the deals the Government witnesses have struck in exchange for cooperating, a contemporaneous instruction should also be given to the jury to the effect that a witness' plea of guilty relates only to that witness. That former employees at entities owned by Mr. Stoll pleaded guilty to crimes they committed places Stoll in a potentially prejudicial light. There is no question that a cautionary instruction is proper. See, e.g., United States v. Borchardt, 698 F.2d 697, 701 (5th Cir. 1983) (jury must be given strong cautionary that it may use guilty plea only to assess witnesses' credibility and not to create inference of guilt against the accused). Especially in light of the anticipated length of this trial and the time between evidence of the cooperator's pleas are

---

[4] Patterned on the example cited, we submit that a formulation such as, "Mortgage dated [specific date] from [Borrower] to [Lender]" would be appropriate.

adduced and when jury instructions are given, a contemporaneous cautionary instruction is necessary to remedy the problem here. In addition, testimony regarding some witnesses' immunity and/or proffer agreements may be unnecessary and contrary to FRE 403 if the defense does not intend to raise the fact of such immunity.

## CONCLUSION

The trial in <u>United States v. Velez et al.</u> has exposed a number of evidentiary problems that invite error and imperil Mr. Stoll's right to a fair trial. Accordingly, Mr. Stoll requests that this Motion in Limine be granted.

The undersigned understands that the Government would oppose this motion.

Respectfully submitted,

s/ Michael S. Pasano
Florida Bar No. 0475947
CARLTON FIELDS
100 S.E. 2nd Street, 42nd Floor
Miami, Florida 33131-2114
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
E-mail: mpasano@carltonfields.com

Robert Nicholson, Esq.
NICHOLSON LAW GROUP PA
200 South Andrews Avenue, Suite 100
Ft. Lauderdale, FL  33301
Telephone: (954) 351-7474 Ext. 218
Facsimile: (954) 351-7475
E-mail:  robert@nicholsonlawgroup.com

Bruce Zimet, Esq.
1 Financial Plaza, Suite 2612
Ft. Lauderdale, Florida  33394
Telephone: (954) 764-7081
Facsimile: (854) 760-4421
E-mail:  bazimetlaw@aol.com
Attorneys for Defendant Steven Stoll

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing document has been filed via electronic mail with the Clerk of the Court by using CM/ECF System which will send a notice of electronic filing to the following counsel of record or pro se parties identified in the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on this 11th day of April, 2011.

    s/ Michael S. Pasano

SERVICE LIST
United States v. Guaracino, et al.
Case No. 10-60194-CR-COHN/SELTZER
United States District Court
Southern District of Florida

Jeffrey Howard Kay, Esq.
Jeffrey.kay@usdoj.gov
United States Attorney's Office
500 East Broward Boulevard, 7th Floor
Fort Lauderdale, Florida 33301-3002
(954) 356-7255 x3593
(954) 356-7336 (fax)
**Attorney for Plaintiff**
**United States of America**
**Via Electronic Court Filing**

Michael Patrick Sullivan, Esq.
Pat.sullivan@usdoj.gov
99 Northeast 4th Street
Miami, Florida 33132
(305) 961-9274
(305) 536-4675 (fax)
**Attorney for Plaintiff**
**United States of America**
**Via Electronic Court Filing**

Jordan M. Lewin, Esq.
Lewinlaw@gmail.com
Downtown Legal Center
46 Northeast 6th Street, Suite 104
Miami, Florida 33132
(305) 577-8525
(305) 441-1423 (fax)
**Attorney for Defendant**
**Dennis Guaracino, Jr.**
**Via Electronic Court Filing**

Anthony M. Livoti, Esq.
amlpa@bellsouth.net
721 Northeast 3rd Avenue
Fort Lauderdale, Florida 33304
(954) 463-3777

Laurie E. Rucoba, Esq.
laurie.rucoba@usdoj.gov
United States Attorney's Office
500 East Broward Boulevard, 7th Floor
Fort Lauderdale, Florida 33301-3002
(954) 356-7255 x3613
(954) 356-7336 (fax)
**Attorney for Plaintiff**
**United States of America**
**Via Electronic Court Filing**

Michael Dennis Walsh, Esq.
mdwalsh@bellsouth.net
46 Northeast 6th Street
Miami, Florida 33132
(305) 444-7700
(305) 441-1423 (fax)
**Attorney for Defendant**
**Joseph Guaracino**
**Via Electronic Court Filing**

Howard Leslie Greitzer, Esq.
hgreitzer@lyonssanders.com
Lyons & Sanders
1301 East Broward Blvd, Suite 220
Fort Lauderdale, Florida 33301
(954) 467-8700
(954) 763-4856 (fax)
**Attorney for Defendant**
**Matthew Gulla**
**Via Electronic Court Filing**

Deric Zacca, Esq.
dericzacca@dczlaw.com
Cabrera & Zacca, LLP
Monarch Professional Centre
12781 Miramar Pkwy, Suite 303

(954) 463-3792 (fax)
**Attorney for Defendant**
**Joseph Lagrasta**
**Via Electronic Court Filing**

Michael E. Dutko, Esq.
medtko@aol.com
Bogenschutz, Dutko & Kroll, PA
600 South Andrews Avenue
Suite 500
Fort Lauderdale, Florida 33301
(954) 764-2500
(954) 764-5040 (fax)
**Attorney for Defendant**
**Daryl Radziwon**
**Via Electronic Court Filing**

Alan Randall Haas, Esq.
arandallhaas@yahoo.com
633 S.E. 3rd Avenue, Suite 4-F
Fort Lauderdale, Florida 33301
(954) 763-9211
(954) 463-1245 (fax)
**Attorney for Defendant**
**Jacqueline Trumbore**
**Via Electronic Court Filing**

Roger Cabrera, Esq.
Cabrera & Zacca, LLP
12781 Miramar Parkway
Suite 303
Miramar, Florida  33027
(954) 450-4848
(954) 450-4204 (fax)
rogercabrera@dczlaw.com
**Co-Counsel for Defendant**
**Casey Mittauer**

Miramar, Florida 33027-2908
(954) 450-4848
(954) 450-4204 (fax)
**Attorney for Defendant**
**Casey Mittauer**
**Via Electronic Court Filing**

Fred Haddad, Esq.
Dee@FredHaddadLaw.com
1 Financial Plaza
Suite 2612
Fort Lauderdale, Florida 33394
(954) 467-6767
(954) 467-3599 (fax)
**Attorney for Defendant**
**Rene Rodriguez, Jr.**
**Via Electronic Court Filing**

Jayne Claire Weintraub, Esq.
jweintraub@saleweintraub.com
Wachovia Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131
(305) 374-1818
(305) 379-0069 (fax)
**Attorney for Defendant**
**Robert Depriest**
**Via Electronic Court Filing**

Steven M. Potolsky, Esq.
100 SE Second Street #3550
Miami, FL. 33131
Tel. (305) 530-8090
Fax (305) 358-5917
stevepo@bellsouth.net
**Co-Counsel for Defendant DePriest**
**Via Electronic Court Filing**

Case 0:10-cr-60194-JIC   Document 1108   Entered on FLSD Docket 04/11/2011   Page 14 of 14

| | |
|---|---|
| Steven Hunter Kassner, Esq.<br>kassners@bellsouth.net<br>4000 Ponce de Leon<br>Suite 470<br>Coral Gables, Florida 33146<br>(305) 740-5405<br>(305) 278-7795 (fax)<br>**Attorney for Defendant**<br>**Joseph Derosa**<br>**Via Electronic Court Filing** | David William Macey, Esq.<br>dm@davidmacey.com<br>David W. Macey, P.A.<br>2699 South Bayshore Drive, 7th Floor<br>Coconut Grove, Florida 33133<br>(305) 860-2562<br>(305) 675-5841 (fax)<br>**Attorney for Defendant**<br>**Joseph Derosa**<br>**Via Electronic Court Filing** |
| Bradford M. Cohen, Esq.<br>lawronin@aol.com<br>Bradford Cohen Law<br>1132 Southeast 3rd Avenue<br>Fort Lauderdale, Florida 33316<br>(954) 523-7774<br>(954) 523-2656 (fax)<br>**Attorney for Defendant**<br>**John Velez**<br>**Via Electronic Court Filing** | Martin Alan Feigenbaum<br>miamivicelaw@aol.com<br>P.O. Box 545960<br>Surfside, Florida 33154<br>(305) 866-8334<br>(305) 866-8335<br>**Attorney for Defendant**<br>**Steven Orchard**<br>**Via Electronic Court Filing** |